## Mueller & Martin, et al. v. Goddard, et al.

(Decided October 12, 1910.)

### Appeal from Mercer Circuit Court.

Contracts—Brokerage Sale of Town Lots—Agreed Compensation—
Action to Enforce.—Appellant Mueller & Martin, a corporation
engaged in the real estate brokerage business, contracted with
the defendant to subdivide 20 acres of his land located within
the city of Harrodsburg into lots and sell the lots at public sale,
and bear all the expenses, placing a minimum price upon each
lot, provided the aggregate sum of all the lots should not be
less than $6,000.00. The owner to have the first $5,000.00 in
cash and notes, and appellant the next $1,000.00; any excess
over $6,000.00 up to $7,000.00 to be divided equally. After
$7,000.00 was realized the owner was to convey to appellant an
undivided half interest in the unsold lots. Two sales were made,
realizing $4,877.50, which was paid to and accepted by the
owner, leaving unsold 29 lots. At the third sale each of the 29
lots were bid in by appellant, the proceeds aggregating $1,125.00
(the owner being present in person and by attorney and pre-
vented third persons from bidding). The owner declined to
sign deeds for these 29 lots, and appellant instituted this suit
to compel him to accept the sum of $125.00, which had been
tendered and which was sufficient to bring the owner's portion
of the sales up to $5,000.00. Held, that under the contract, ap-
pellant was interested in the lots to a greater extent than a
mere agent, and had the right under the contract to use all
reasonable and fair means to protect this interest, and is
entitled to have the lots sold by order of the court and the
proceeds divided in accordance with the contract.

FLEXNER, CAMPBELL & GORDON, ROBERT HARDIN and
EMMETT PURYEAR for appellants.

E. H. GAITHER for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY—
Reversing.

The appellant, Mueller & Martin, is a corporation en-
gaged in the business of real estate brokerage, with
headquarters in Louisville. Appellees, R. E. Goddard
and Kate Goddard, are residents of Harrodsburg, and
were the owners of a tract of land consisting of about
twenty acres located within the limits of that city. On
August 18, 1908, appellees entered into a contract with
appellant, by which they authorized the latter to sub-

divide and sell the tract of land. Appellant was to survey the land, plat it into subdivisions, conduct all sales, and bear all the expenses incident thereto. The parties to the agreement were to place upon each lot a minimum price, for less than which the lot was not to be sold. It was provided, however, that the aggregate sum of said minimum price on all the lots should not be less than $6,000.00. Appellees were to have the first $5,000.00 in cash and notes realized from the sales provided for in the contract. Appellant was to have the next $1,000.00 in cash and notes. Any excess over $6,000.00, up to $7,000.00, was to be divided between appellant and appellees. After $7,000.00 had been realized, appellees agreed to convey to appellant an undivided one-half interest in the lots remaining unsold. The first sale was to take place not later than October 1st, 1908, and the second sale not later than November 1, 1908. It was further provided that, unless the proceeds of the sales should aggregate in cash and notes the sum of $6,000.00 before August 10th, 1909, the operation of the contract should cease and determine, and appellant was to be entitled only to such amount as might be realized in excess of $5,000.00. If, however, the proceeds of the sales aggregated the sum of $6,000.00 on or before August 10, 1909, then the contract should continue in force until the proceeds of the sales amounted to $7,000.00. Appellees agreed to execute deeds of conveyance carrying out the terms of all sales made by appellant.

In accordance with the terms of the above contract, appellant surveyed, platted and subdivided the property, paying therefor the sum of $950.00. Appellant conducted the first sale on September 12, 1908, realizing in cash and notes the sum of $4,225.00. Appellees accepted this sum and confirmed the sales. On May 1st, 1909, appellant conducted a second sale, and realized in cash and notes the sum of $652.50. This sum was also accepted by appellees. The total amount realized on the two sales was $4,877.50. Owing to the fact that some of the purchasers failed to comply with the terms of the sale conducted in May, 1909, there remained unsold about 29 lots. After due advertisement, a third sale was held on August 7, 1909. Each of these twenty-nine lots was offered for sale, and appellant, being the highest and best bidder, was declared the purchaser. The proceeds of this sale aggregated $1,125.00 Before these sales no minimum price on each lot was agreed upon. At the

sale of August 7, 1909, appellees were present in person and by attorney, and prevented third persons from bidding on the lots offered at that sale. Appellant then bid on the lots to protect its investment under the contract; and became the purchaser thereof, with the full knowledge of appellees that it was so bidding. Appellees declined to deed the lots so purchased to appellant.

Appellant instituted this action to compel appellee to accept the sum of $125.00, which had been tendered and which was sufficient to bring appellees' portion of the sale up to $5,000.00, and to compel appellees to make conveyances to appellant of the lots in question. Appellant also asked that, if this be not done, the court direct a sale of the lots in question, and apportion the proceeds according to the terms of the contract, and for all proper relief.

The foregoing facts appear from the petition and amended petitions. The trial court sustained a demurrer thereto, evidently on the ground that appellant, as agent of appellees, had no right to make the purchases. It is evident, however, that appellant was interested in the lots to a greater extent than that of a mere agent. Under the contract it had the right to use all reasonable and fair means to protect this interest. We are not disposed, however, to uphold the sale which was actually made. The pleadings show that third persons were prevented from bidding or persuaded not to do so. That being the case, it would not be fair to either side to hold the sale to be valid. As the time was fast approaching when appellant's rights under the contract would cease, and it would. be entitled to receive only such sum as may have been realized in excess of $5,000, appellant had the right to advertise and conduct the sale in question. Appellees had no right to interfere with, and prevent the sale. Though no valid sale took place, this was due to the acts of appellees, and that being true, appellant did not forfeit its rights under the contract by its failure to secure a valid sale before August 10th, 1909. As neither party insisted upon fixing a minimum price upon the lots before the first two sales, and as appellees accepted the proceeds of those sales, it would not be fair to hold that appellant had no right to conduct a third sale until a minimum price should be agreed upon. Appellant's rights to any part of the proceeds of the sale depended upon whether or not the proceeds exceeded the sum of

$5,000 before August 10th, 1909.  To permit the parties to sell a majority of the lots without fixing a minimum price, and then hold that appellee could fix a minimum price on the remaining lots, thus placing upon appellant a greater burden than was intended by the parties, would be unfair and unreasonable.

Upon the facts as they are made to appear in the petition and the amendments thereto, we conclude that appellant is entitled to have the lots sold by order of the court and the proceeds divided in accordance with the terms of the contract.  In this way the rights both of appellant and appellees will be fully protected, and substantial justice will be done.

Judgment reversed and cause remanded, with directions to overrule the demurrer to the petition as amended, and for further proceedings consistent herewith.